# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

| | |
|---|---|
| SPECIAL COUNSEL<br>EX REL. CARMINE A. TARANTINO,<br>        Petitioner, | DOCKET NUMBER<br>CB-1208-16-0027-U-2 |
| v. | |
| SMITHSONIAN INSTITUTION,<br>        Agency. | DATE: November 7, 2016 |

## THIS STAY ORDER IS NONPRECEDENTIAL[1]

Julie R. Figueira, Esquire, Washington, D.C., for the petitioner.

Amy Koontz, Esquire, Katherine Bartell, Esquire, and Christine Nicholson, Washington, D.C., for the agency.

### BEFORE

Susan Tsui Grundmann, Chairman
Mark A. Robbins, Member

### ORDER ON STAY EXTENSION REQUEST

¶1 Pursuant to 5 U.S.C. § 1214(b)(1)(B), the Office of Special Counsel (OSC) requests a 90-day extension of the previously granted stay of the Smithsonian Institution's change of Carmine A. Tarantino's work schedule and duty station.

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

For the reasons discussed below, we GRANT OSC's request IN PART and extend the stay for 72 days, through and including January 18, 2017. In addition, we DENY the Smithsonian Institution's motion to seal the record.

## BACKGROUND

¶2    On September 20, 2016, OSC filed an initial request for a 45-day stay of a change in work schedule and duty station of Mr. Tarantino, a Utility Systems Repairer Operator with the Smithsonian Institution in New York City, New York. MSPB Docket No. CB-1208-16-0027-U-1, Stay Request File (SRF), Tab 1. On September 23, 2016, Chairman Susan Tsui Grundmann granted OSC's initial stay request, finding that, given the deference that should be afforded to OSC and the assertions made in the stay request, there were reasonable grounds to believe that the Smithsonian Institution changed Mr. Tarantino's work station and duty schedule in retaliation for protected activity under 5 U.S.C. § 2302(b)(9)(B) and (C). *Special Counsel ex rel. Carmine A. Tarantino v. Smithsonian Institution*, MSPB Docket No. CB-1208-16-0027-U-1, Order on Stay Request, ¶¶ 6‑10 (Sept. 23, 2016); SRF, Tab 3, ¶¶ 6-10. On October 21, 2016, OSC filed a timely request to extend the stay for an additional 90 days. MSPB Docket No. CB-1208-16-0027-U-2, Stay Request Extension File (SREF), Tab 1. The agency filed a timely opposition to the extension request.[2] SREF, Tab 5.

---

[2] On November 2, 2016, OSC filed a motion for leave to respond to the Smithsonian Institution's opposition to the stay extension request. SREF, Tab 5 at 2‑9. Neither the applicable statute nor the Board's regulations provide for such a response. 5 U.S.C. § 1214(b)(1)(B), (C); 5 C.F.R. § 1201.136(b). Furthermore, OSC's motion fails to demonstrate that such a response is necessary for the Board to resolve the stay extension request. SREF, Tab 5 at 2‑9. Therefore, OSC's motion is DENIED.

**ANALYSIS**

The Board has authority to extend the stay.

¶3        Pursuant to 5 U.S.C. § 1214(b)(1)(A), the Board's stay authority is limited to personnel actions, *see Special Counsel v. Internal Revenue Service*, 65 M.S.P.R. 146, 148 (1994), which are defined by 5 U.S.C. § 2302(a)(2) as certain specified actions with respect to an employee in, or applicant for, a covered position "in an agency."  In its opposition to the stay extension request, the Smithsonian Institution argues that the Board lacked authority to order the initial stay, and lacks authority to extend the stay, because the Smithsonian Institution is not an "agency," as defined by 5 U.S.C. § 2302(a)(2)(C).  SREF, Tab 5 at 6‑13.

¶4        In *Pessa v. Smithsonian Institution*, 60 M.S.P.R. 421, 425 (1994), an individual right of action (IRA) appeal, we held that the Smithsonian Institution is an "agency" under 5 U.S.C. § 2302(a)(2)(C).  The Smithsonian Institution argues that *Pessa* was incorrectly decided, and asks us to overrule the decision. SREF, Tab 5 at 8‑13.  We decline the Institution's invitation to overrule established Board precedent in the context of a stay extension request, which, inter alia, imposes time constraints that preclude full development of the record on the issue.[3]

We extend the stay for 72 days.

¶5        A stay granted pursuant to 5 U.S.C. § 1214(b)(1) is issued in order to maintain the status quo ante while OSC and the agency involved resolve the

---

[3] In its opposition to the stay extension request, the Smithsonian Institution argues that in *Special Counsel ex rel. Hardy v. Department of Health & Human Services*, 117 M.S.P.R. 174, ¶¶ 5‑18 (2011), the Board terminated a stay when we determined that the individual at issue was not an "employee" entitled to file an IRA appeal under 5 U.S.C. § 1221.  SREF, Tab 5 at 8.  However, in *Hardy*, we reached our decision in conformance with existing case law, applying established precedent.  *Hardy*, 117 M.S.P.R. 174, ¶¶ 5‑17.  In contrast, here, the Smithsonian Institution asks that we overrule established Board precedent.

disputed matter. *Special Counsel v. Department of Transportation*, [74 M.S.P.R. 155](), 157 (1997). The purpose of the stay is to minimize the consequences of an alleged prohibited personnel practice. *Id*. In evaluating a request to extend a stay, the Board will review the record in the light most favorable to OSC and will grant a stay extension request if OSC's prohibited personnel practice claim is not clearly unreasonable. *Id*. at 158.

¶6        In its initial stay request and the request for extension currently before the Board, OSC alleges that, in November and December 2015, in Mr. Tarantino's capacity as a union steward, he filed claims or complaints on behalf of a coworker with the Department of Labor, the Occupational Safety and Health Administration (OSHA), the agency's Office of Safety, Health, and Environmental Management (OSHEM), and the Office of Equal Employment Minority Affairs. SRF, Tab 1 at 7‑8; SREF, Tab 1 at 3‑4. OSC further contends that on November 22, 2015, Mr. Tarantino filed a complaint with the Smithsonian Institution's Office of the Inspector General (OIG), in which he alleged that his second‑level supervisor had retaliated against a coworker and had submitted false statements to OSHA and OSHEM. SRF, Tab 1 at 8; SREF, Tab 1 at 4. According to OSC, Mr. Tarantino's second-level supervisor learned of the OIG complaint and some of Mr. Tarantino's activities as union steward in November 2015. SRF, Tab 1 at 8; SREF, Tab 1 at 4. Thereafter, on November 24, 2015, Mr. Tarantino's second-level supervisor informed him that effective December 13, 2015, his work schedule and duty station would change from a third shift tour of duty at the Cooper Hewitt Smithsonian Design Museum, to a first shift tour of duty at the National Museum of the American Indian in lower Manhattan. SRF, Tab 1 at 8; SREF, Tab 1 at 4. Accordingly, OSC alleges that it has a reasonable belief that the agency changed Mr. Tarantino's duty station and work schedule in retaliation for protected activity under [5 U.S.C. § 2302]()(b)(9)(B) and (C). SRF, Tab 1 at 12‑14; SREF, Tab 1 at 3, 6‑9.

¶7      In its request for an extension, OSC asserts that the factual record in this case has not changed significantly since OSC filed its initial stay request.  SREF, Tab 5 at 3.   OSC alleges that 4 days after the Board granted the initial stay request, it requested information and documents from the Smithsonian Institution pursuant to 5 C.F.R. § 5.4.  SREF, Tab 5 at 5.  OSC contends that, as of the date of the stay extension request, the Smithsonian Institution had not responded with information or documents.  *Id*.  OSC further asserts that, on October 11, 2016, approximately 2 weeks after the Board granted the initial stay request, OSC requested information and documents from the Smithsonian Institution's OIG, and as of the date of the stay extension request, the OIG had not responded with any information or documents.  *Id*.  However, according to OSC, on October 12, 2016, the OIG provided a "Close Out Synopsis" and an October 3, 2016 "Report of Investigation on Alleged Reprisal by a Smithsonian Institution Employee" (the OIG report) pertaining to Mr. Tarantino, without any supporting evidence relied on in the synopsis or report.  *Id*. at 5‑6.

¶8      OSC asserts that since the initial stay order, it has interviewed several agency witnesses, and that it intends to re‑interview them, presumably as a result of the information and documents produced by the agency.  *Id*. at 6.  Finally, OSC contends that it has attempted several times to schedule interviews of Smithsonian Institution officials, but that the agency has not confirmed a time or date for the interviews.  *Id*.  For these reasons, OSC alleges that it requires additional time to investigate this matter.  *Id*. at 9‑10.

¶9      In its opposition to the stay extension request, the Smithsonian Institution asserts that there has been a material change in the evidentiary record since the initial stay order because its OIG concluded that the second-level supervisor did not retaliate against Mr. Tarantino.  SREF, Tab 5 at 15‑22.  In support of this

assertion, the Smithsonian Institution submits the OIG report and a number of supporting exhibits.[4]  *Id*. at 24‑140.

¶10     As an initial matter in the Smithsonian Institution's arguments opposing the stay extension request, the majority of the exhibits and a significant portion of the OIG report pertain to:  (1) a December 24, 2015 letter of reprimand that the second-level supervisor issued to Mr. Tarantino regarding his refusal to attend a civility training session on December 7, 2015; (2) Mr. Tarantino's alleged lack of candor regarding the reason he was unable to attend the training; (3) the facts and circumstances surrounding a December 31, 2015 proposal to suspend Mr. Tarantino for 3 days for absence without leave, lack of candor about his whereabouts, and violating security regulations; and (4) Mr. Tarantino's alleged lack of candor regarding his outside employment with a private entity, which the Smithsonian Institution contends is the real reason that he opposes the changed tour of duty.  *Id*. at 17‑22, 33‑38, 67‑140.

¶11     We find that the Smithsonian Institution has failed to demonstrate that this evidence and argument indicates that OSC's request for a stay based on the

---

[4] The Smithsonian Institution has moved to seal its response to the stay extension request, the OIG report, and several of the attached exhibits on the grounds that the documents are sensitive and confidential, and the OIG's case at issue is still open. SREF, Tab 4 at 4‑7.  OSC does not oppose the motion to seal the response to the stay extension request, but it opposes the motion to seal the attachments.  SREF, Tab 4 at 24-28.  As an initial matter, by their nature, several of the attached exhibits that the Smithsonian Institution seeks to seal are already in Mr. Tarantino's possession or available to Mr. Tarantino.  *Id*. at 98, 101, 105.  Furthermore, the Board's consideration of a motion to seal is circumscribed by the Freedom of Information Act (FOIA), 5 U.S.C. § 552.  *Social Security Administration v. Doyle*, 45 M.S.P.R. 258, 262 (1990). FOIA exemptions are to be narrowly construed, and the Government bears the burden of proving the applicability of an exemption.  *See Department of State v. Ray*, 502 U.S. 164, 173 (1991).  Moreover, public policy does not favor sealing records, and the burden is on the party making such a request to demonstrate why the record should be sealed.  *Doyle*, 45 M.S.P.R. at 261.  In the instant appeal, the Smithsonian Institution's generalized allegations do not satisfy its burden of establishing that the record should be sealed, and accordingly, the motion to seal is denied.

prohibited personnel practices claim is unreasonable. *See Special Counsel v. Department of Transportation*, 74 M.S.P.R. at 157. This evidence is not directly relevant to the issue of whether the second-level supervisor changed Mr. Tarantino's duty station and work schedule in retaliation for protected activity under 5 U.S.C. § 2302(b)(9)(B) and (C). Furthermore, although OSC mentioned the letter of reprimand and proposed suspension in its initial stay request, it has not requested a stay of either of these actions. SRF, Tab 1 at 8‑9.

¶12    However, the Smithsonian Institution also contends that OSC's prohibited personnel practices claim is unreasonable because the OIG report concluded that the change in Mr. Tarantino's duty station and work schedule was not retaliatory. SREF, Tab 5 at 15‑17, 31‑33. The OIG report discusses interviewing the second‑level supervisor who presented his rationale for changing Mr. Tarantino's schedule and duty location. The report concludes that these changes were planned before the second‑level supervisor learned of Mr. Tarantino's alleged protected activity. *Id*. at 31‑33. In support of this assertion, the Smithsonian Institution submits evidence that the second‑level supervisor began proposing general duty station and work schedule changes in October 2015. *Id*. at 60-65. However, Mr. Tarantino's name was not included on an October 26, 2015 email list of employees proposed for work schedule changes, *id*. at 63, and it is unclear when he was added, or whether any of the other employees on the proposed list ultimately had their schedules changed.

¶13    A stay proceeding is not intended to be a substitute for a complete hearing on the merits of a prohibited personnel practice claim. *Special Counsel ex rel. Tines v. Department of Veterans Affairs*, 98 M.S.P.R. 510, ¶ 5 (2005). OSC's stay request need merely fall within the range of rationality to be granted. *Id*. The Board reviews the facts as alleged by OSC in the light most favorable to a finding that there are reasonable grounds to believe that a prohibited personnel practice was committed. *Id*. Here, viewing the record in the light most favorable

to OSC, and considering the deferential legal standard, we find that OSC's claim that the change in Mr. Tarantino's work schedule and duty station was retaliatory is not clearly unreasonable, and that OSC has shown reasonable cause to justify extending the stay.

¶14    The length of the extension, however, requires a separate determination. *See Special Counsel ex rel. Waddell v. Department of Justice*, 105 M.S.P.R. 208, ¶ 5 (2007).  The Board may grant an extension for any period that it considers appropriate.  5 U.S.C. § 1214(b)(1)(B); *Waddell*, 105 M.S.P.R. 208, ¶ 3.  Here, although the record does not indicate when Mr. Tarantino filed his OSC complaint, the initial stay request reflects that OSC had reviewed the complaint by April 7, 2016, when it contacted the Smithsonian Institution to request an "informal stay."  SRF, Tab 1 at 6.  However, OSC did not file the initial stay request until more than 5 months afterwards.  SRF, Tab 1.  Furthermore, although this may be attributable in part to a delay by Mr. Tarantino in filing his complaint, OSC did not file the initial stay request until more than 8 months after the effective date of the change in Mr. Tarantino's work schedule and duty station. *Id*.

¶15    The Board has recognized its obligation to press OSC to present corrective action cases in a timely manner. *Special Counsel ex rel. Waddell v. Department of Justice*, 104 M.S.P.R. 141, ¶ 6 (2006).  In light of the factors discussed above, we find that a 72-day extension of the stay is warranted, and we therefore grant OSC's request in part.

## ORDER

¶16    Pursuant to 5 U.S.C. § 1214(b)(1)(B), a 72-day extension of the stay is hereby GRANTED.  It is hereby ORDERED that:

>    (1) The terms and conditions of the stay issued on September 23, 2016, are  extended through and including January 18, 2017;

(2) Within 5 working days of this Order, the agency shall submit evidence to the Clerk of the Board showing that it has complied with this Order;

(3) Any request for a further extension of the stay pursuant to 5 U.S.C. § 1214(b)(1)(B) must be received by the Clerk of the Board and the agency, together with any evidentiary support, on or before January 3, 2017. *See* 5 C.F.R. § 1201.136(b). Any comments on such a request that the agency wishes the Board to consider pursuant to 5 U.S.C. § 1214(b)(1)(C) must be received by the Clerk of the Board, together with any evidentiary support, before January 10, 2017. *See* 5 C.F.R. § 1201.136(b).


FOR THE BOARD:                    _____
                                 Jennifer Everling
                                 Acting Clerk of the Board

Washington, D.C.